IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER TERRELL LAMBERT,

Petitioner,

v.

GUY HALL,

Respondent.

Case No. 2:15-cv-00847-SI

OPINION AND ORDER

Kristina S. Hellman
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

        Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nicholas M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

        Attorneys for Respondent

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Attempted Murder, Assault, and Unlawful Use of a Firearm. For the following reasons, the Amended Petition for Writ of Habeas Corpus (#27) is denied.

## BACKGROUND

On July 28, 2002, Petitioner visited the Quest nightclub in Portland where he became involved in a dispute with Hollis McClure. Bystanders separated the two men but, shortly thereafter, Petitioner fired a handgun in McClure's direction. Petitioner missed McClure, but struck Shontae Bell in the stomach, Y'isha Rosbrough in the arm, and Michael Newman in the leg. All three survived, and McClure and two other witnesses to the event identified Petitioner as the shooter.

Police arrested Petitioner on August 11, 2002 and, eight days later, the Multnomah County Grand Jury indicted him on four counts of Attempted Murder, three counts of Assault in the Second Degree, one count of Attempted Assault in the First Degree, and eight counts of Unlawful Use of a Weapon with a Firearm. Respondent's Exhibit 102. The trial court appointed Richard Vogt to represent Petitioner.

Petitioner began to construct a false alibi, prompting him to recruit witnesses to provide perjured testimony. He contacted Quadree Bradley, Jennifer Napolitano, and Brandon Jenkins to help him establish a misleading version of events. Bradley and Napolitano agreed to help him in this endeavor.

2 – OPINION AND ORDER

Petitioner next proceeded to secure different lawyer. In November 2002, he relieved Vogt of further representation, and hired Randy Richardson for a flat fee of $20,000. Represented by new counsel, Petitioner's case proceeded to a settlement conference on January 30, 2003 with Multnomah County Circuit Court Judge Julie Frantz. During that settlement conference, the prosecutor offered to settle the case if Petitioner would plead guilty to various charges that resulted in a sentence of 140 months, but the case did not settle.

Petitioner proceeded to a jury trial where he claimed that he was not at the Quest nightclub at the time of the shooting, and that the State's eyewitnesses were mistaken in their respective identifications. The defense called Bradley and Napolitano, both of whom testified that Petitioner was at the Lush nightclub at the time of the shooting at Quest and, contrary to the State's evidence, Petitioner was wearing blue jeans, a white shirt, a white visor, and white shoes.[1]

In what became a turning point at trial, Napolitano testified that she had seen a friend of hers, Samoyya Morrison, on the night of the shooting outside the Quest nightclub, and spoken to her for a period of 10-15 minutes. Napolitano denied having regular contact with Morrison before that evening, and further denied that she had spoken with Morrison since the night of the shooting. The State called Morrison as a rebuttal witness who testified that, contrary to Napolitano's testimony, she had

---

[1] The State's eyewitnesses testified that the shooter had been wearing a light-colored shirt with dark stripes and black pants. Trial Transcript (2/25/03), pp. 249, 355-56.

been with her boyfriend at Moses Lake on the night of the shooting, nowhere near Quest, and had never seen Napolitano outside of the club. She also testified that she frequently spoke with Napolitano and had last seen her less than three weeks before the trial.

The jury found Petitioner guilty of all charges. Sentencing was postponed, however, as the police investigated why Napolitano's trial testimony was so contradictory to that of Morrison. Napolitano told officers she wanted to talk with Richardson, because he "told me to call him if anything like this happened."[2] Respondent's Exhibit 117, p. 2. She ultimately admitted to police that her testimony was not truthful. She claimed that after the shooting, Petitioner called her from jail and sent her letters telling her what to say, including a false description of clothing he was wearing the night of the shooting. Richardson told Napolitano to destroy the letters because they might incriminate Petitioner.

According to Napolitano, she attended a meeting held by Richardson at which Bradley and Petitioner's girlfriend, Rashida Peterson, were present. Richardson went over the story they were supposed to relate and showed them the clothes they were to describe Petitioner as wearing on the night of the shooting. *Id* at 17-19. Napolitano later told Richardson that she was hesitant to testify falsely on Petitioner's behalf but was also fearful of retaliation if she did not lie because Petitioner's family

---

[2] Evidence would show 152 telephone calls between Richardson and Napolitano. CR 20-5, p. 65.

knew where she lived. Richardson encouraged Napolitano to adhere
to the fabricated story and even began to see her socially,
resulting in a brief sexual relationship. When Napolitano
subsequently called Richardson to advise him that she did not
intend to testify falsely on Petitioner's behalf, Richardson
became agitated. He showed up at Napolitano's apartment fifteen
minutes later, and offered her money if she would testify
consistently with the story he and Lambert had established.
Napolitano accepted $300 from Richardson in exchange for her
false testimony.

According to Napolitano, in the aftermath of her testimony,
Richardson had been particularly concerned about the portion of
her testimony involving Samoyya Morrison because she was not
part of the false alibi. Richardson instructed Napolitano to get
in touch with Morrison and advise her not to answer her door so
that the State would be unable to serve her with a subpoena to
compel her appearance at trial. Morrison initially ignored
authorities when they showed up at her home and knocked on her
door, but later answered the door and was served with a
subpoena. As noted above, Morrison appeared at trial and cast
significant doubt on Petitioner's alibi.

Authorities also interviewed Bradley after the trial, who
also admitted to providing false testimony provided to him by
Petitioner in the form of a letter sent through Rashida
Peterson. Peterson was able to confirm Bradley's statements.

Police also interviewed Brandon Jenkins, whose car had been
hit by a bullet during the shooting. He claimed Petitioner had

sent a letter to him, also by way of a third party, asking that he identify someone else as the shooter. Jenkins did not do as Petitioner asked, and instead kept the letter and provided it to the authorities during the post-trial investigation.

Petitioner appeared for sentencing on April 17, 2003, but the trial judge informed the parties that sentencing would not take place. Richardson was not present in the courtroom at the beginning of the hearing because he was being served elsewhere in the courthouse with search warrants for his home, office, and person related to Petitioner's case. As a result, the State moved to disqualify Richardson as counsel because the new criminal investigation put Richardson and Petitioner in the conflicted position of co-conspirators. The prosecutor felt that Petitioner needed to be represented by independent counsel, but Richardson disagreed. He advised the trial court that Petitioner could waive any conflict that might exist, and that it was Petitioner's option whether to proceed with Richardson as counsel.

Over the State's objection, the trial court asked Petitioner if he wished to have new counsel appointed to which Petitioner replied, "No, I'm comfortable with Mr. Richardson." CR 20-4, p. 241. The trial judge appointed independent counsel to consult with Petitioner, but allowed Richardson to remain as counsel of record until she could more thoroughly study the applicable rules. Four days later, however, the trial judge removed Richardson from the case and ultimately appointed Lisa Ludwig to represent Petitioner at sentencing.

On December 12, 2003, the Multnomah County Grand Jury indicted Richardson and Petitioner with various charges pertaining to bribery, perjury, and witness tampering. While those charges were pending, sentencing regarding the Attempted Murder took place on April 4, 2005. The judge, when imposing sentence on the charges arising from the shooting at Quest, expressly stated that she would not consider Petitioner's misconduct with respect to the falsified evidence. She did, however, state:

> I find that the testimony and the exhibits regarding defendant's role and conduct in soliciting false testimony is reliable. This is clearly reprehensible behavior that cannot be tolerated by the Court, but the justice system, or by the public. It demeans our entire system. And it shows incredible disrespect and arrogance, and perhaps stupidity, as well, on the part of the defendant, and anyone involved with him, in attempting to subvert justice.

Sentencing Transcript (4/5/2005), p. 181. She then proceeded to sentence Petitioner to a sentence totaling 250 months.

Lisa Ludwig filed a Motion for New Trial shortly after Petitioner's sentencing, claiming that a new trial was in order based upon: (1) "irregularity in the proceedings," and (2) insufficiency of the evidence. Ludwig argued that not only was Richardson's conduct reprehensible, but he failed to convey the State's plea offer to Petitioner such that he was the victim of ineffective assistance of counsel. Respondent's Exhibit 166. The trial court did not rule on the Motion which was deemed denied

55 days after its filing under Oregon's procedural rules. *See* ORCP 64(F)(1).

In May 2005, Petitioner entered a guilty plea to Conspiracy to Bribe a Witness, Bribing a Witness, Criminal Conspiracy to Commit Perjury, Solicitation to Commit Perjury, Perjury and Tampering with Witnesses. As a result, the court sentenced him to 22 months in prison, 18 of which it imposed consecutively to the sentence stemming from the Attempted Murder trial. Richardson proceeded to trial where he was acquitted of all charges.

Petitioner took a direct appeal in which he alleged that certain treatment records of his victims should not have been admitted during his trial. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Lambert,* 228 Or. App. 756, 210 P.3d 945 (2009), *rev. denied,* 347 Or. 533, 225 P.3d 43 (2010).

Petitioner next filed for post-conviction relief in Umatilla County where, relevant to this case, he alleged that Richardson failed to relay the State's plea offer to him. The PCR Court denied relief, finding that Petitioner was not credible, and that Judge Frantz communicated the State's plea offer directly to him during the settlement conference. Respondent's Exhibit 159, p. 2. Petitioner appealed this decision, but the Oregon Court of Appeals affirmed the lower court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Lambert v. Coursey*, 265 Or.

App. 759, 337 P.3d 204 (2014), *rev. denied*, 356 Or. 689, 344 P.3d 1111 (2015).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on May 18, 2015, and amended his Petition with the assistance of appointed counsel on April 22, 2016 to state the following claims:

> 1. Richardson rendered ineffective assistance when he failed to inform Petitioner of the State's offer of a plea bargain, and failed to counsel Petitioner about the possibility of resolution of his case through plea negotiations;
>
> 2. Petitioner was deprived of his right to conflict-free representation where Richardson was motivated by his own personal and financial self-interest;
>
> 3. Petitioner was denied the effective assistance of counsel when he was represented by a trial attorney who had an unwaivable conflict of interest, and was motivated solely by his own personal and financial self-interest; and
>
> 4. Appellate counsel was ineffective for failing to raise on appeal the denial of Petitioner's Motion for New Trial.

Amended Petition (#27).

Respondent asks the Court to deny relief on these claims because: (1) the PCR Court reasonably denied relief on Ground One; (2) Grounds Two and Three are procedurally defaulted, Petitioner is unable to excuse his default, and the claims nevertheless lack merit; and (3) Petitioner fails to sustain is burden of proof as to Ground Four.

///

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.

Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) also allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

## II. **Ground One**

Petitioner first claims that Richardson was constitutionally ineffective when he failed to convey the State's plea offer, or otherwise counsel him on plea negotiations. As an initial matter, the Court notes that

Petitioner attempts to rely on a variety of new evidence to support his claim which he never presented to the PCR Court. Such evidence is not properly considered here. 28 U.S.C. § 2254(d)(1); *Cullen v. Pinholster*, 563 U.S. 170, 182-83 (2011). Accordingly, this Court considers only the evidence that was properly at issue in Petitioner's PCR proceeding.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When

*Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During the PCR proceeding, Petitioner submitted two pieces of evidence relevant to his Ground One claim. First, Petitioner offered his own Affidavit previously filed in support of his Motion for New Trial in which he claimed that "Mr. Richardson never asked [during the settlement conference] or at any other time if I was willing to make a plea bargain, nor was I told what the sentence would be if I was interested in a plea bargain." Respondent's Exhibit 166, p. 14. In addition, he offered Lisa Ludwig's Affidavit which he had also used to support his Motion for New Trial. In her Affidavit, Ludwig stated that her review of Richardson's file failed to show any indication that he conveyed the State's plea offer to Petitioner. *Id* at 11.

The State countered by offering the Affidavit of the prosecutor in which she stated that, "based upon my experience with these types of settlement hearings, it seems highly improbable that petitioner would have been unaware of the possibility of settlement and its terms." Respondent's Exhibit 120, pp. 1-2. Consistent with this Affidavit, the State also offered a letter from Judge Frantz wherein she stated that

although she did not recall the particulars of Petitioner's settlement conference, she could outline her standard approach to settling criminal cases that she had "followed for two decades." Respondent's Exhibit 174, p. 1. Part of that approach involved Judge Frantz reviewing with a defendant the possible sentence if convicted at trial, and then proceeding to "discuss the plea proposal . . . that is being contemplated, so the defendant can weigh the risk of going to trial versus the certainty of a plea proposal if approved by the senior DDA's." *Id* at 3.

Judge Frantz did state, however, that "[v]ery, very seldom, but perhaps a couple of times in cases which I do not specifically recall," settlement conferences ended abruptly before she had an opportunity to speak directly with a defendant. *Id* at 4. Given the remainder of the record, however, the remote instances mentioned by Judge Frantz would not have included Petitioner. Specifically, although he stated in his Affidavit seeking a new trial that Judge Frantz never conveyed the particulars of the State's plea offer to him, he did agree that Judge Frantz had met personally with him and told him what his maximum sentence would be if convicted at trial, and that a plea deal would reduce his sentence. Respondent's Exhibit 166, p. 14.

The PCR Court rejected Petitioner's Ground One claim, finding that Petitioner "refused to accept any plea offer." Respondent's Exhibit 159, p. 2. The PCR Court also made the following findings:

> 3. Based on [Petitioner's] behavior in this case and his subsequent convictions, it is clear that he has no respect for the truth and is totally without credibility.
>
> \* \* \* \* \*
>
> 7. This court also does not believe that during the course of the judicial settlement conferment, the judge didn't explain any plea offer or the process of an offer to [Petitioner]. [Petitioner] raised this issue in [his] motion for a new trial and the motion was denied and could have been appealed.
>
> 8. R. Richardson's trial performance (disregarding the use of perjury for a moment) was more than adequate.
>
> 9. Lambert comes to this court as a co-conspirator of Richardson. Before retaining Richardson, Lambert had already arranged for three witnesses to lie. Richardson clearly had an ethical and legal obligation to refuse to use the defense, but Lambert didn't care about any of that. He cannot now complain about the course of conduct he initiated, paid for and participated in. There is no evidence or even claim that he would have abandoned the defense or that he regrets the conspiracy--only that he regrets losing.

Respondent's Exhibit 159, pp. 2-3.

Petitioner states that he was not with Richardson at the time that the State made its plea offer, and the evidence showed

that nothing in Richardson's file notes indicated that Richardson communicated the plea offer to his client. Petitioner argues that there was no evidence in the record to support the PCR Court's factual determination that Judge Frantz actually communicated the State's plea offer to him,[3] thus he believes the PCR Court's factual finding on this point amounts to mere speculation.

Petitioner presented the plea offer issue to the PCR Court for a determination, thus placing that court in the position of having to render a decision based upon a rather scant record of something that might, or might not have, been orally conveyed. The PCR Court found that Petitioner was completely lacking credibility, thereby negating Petitioner's Affidavit. It was therefore left only with the fact that Ludgwig was unable to find any specific notation in Richardson's files that he communicated the plea offer to Petitioner. The absence of that information did establish that Richardson never discussed the plea offer with Petitioner, nor did it not speak directly to whether Judge Frantz conveyed the plea offer to Petitioner when

_____

[3] Petitioner also asserts that the PCR Court erroneously stated that Petitioner could have appealed the issue on direct review because the issue pertained to ineffective assistance of counsel, something that can only be raised during a PCR proceeding in Oregon's courts. It is not appropriate for this Court to second-guess the PCR Court's ruling on this state-law procedural issue. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In any event, the resolution of Petitioner's Ground One claim does not depend on whether the PCR Court correctly interpreted Oregon law concerning the appealability of the denial of Petitioner's Motion for New Trial.

she met with him personally. Indeed, given Judge Frantz's letter and the prosecutor's Affidavit, there was evidence in the record from which the PCR Court could make a reasonable factual finding that Judge Frantz conveyed the State's plea offer of 140 months directly to Petitioner. Certainly, Petitioner has not presented clear and convincing evidence to the contrary to overcome this factual finding. *See* 28 U.S.C. § 2254(e)(1). Consequently, even if Richardson failed to communicate the plea deal to his client, such an omission did not result in prejudice to Petitioner.

Petitioner fails to establish prejudice for another reason, as well. Assuming he could overcome the PCR Court's factual findings regarding his lack of credibility and Judge Frantz's communication of the plea offer, he has not overcome the finding that he was not prepared to accept a plea deal (let alone a 140-month plea deal). Even after the jury had convicted him (but prior to sentencing), the State offered Petitioner a 120-month sentence but only if he was willing to offer his cooperation regarding the events surrounding the Attempted Murder. Respondent's Exhibits 175 & 176, p. 2. Petitioner, however, flatly refused to offer his cooperation as to the incident. *Id.* Respondent's Exhibit 176, p. 2. Even in his Motion for New Trial predicated upon the alleged failure to communicate a plea offer, Petitioner stated only that he would have "considered" the State's plea offer had it been conveyed, not that he would have

accepted it. Respondent's Exhibit 166, p. 14. For all of these reasons, the PCR Court's denial of this claim is neither contrary to, nor an unreasonable application of clearly established federal law. The decision also did not involve an unreasonable determination of the facts in light of the evidence presented.

### III. **Grounds Two and Three**

As Grounds Two and Three, Petitioner argues that he was denied his right to conflict-free representation. The Court must first resolve whether Petitioner can overcome his failure to adequately preserve Grounds Two and Three in the state courts through a showing of cause and prejudice. In doing so, the parties agree that the Court is not limited to the record developed in the PCR proceeding, thus the Court also considers all of Petitioner's Exhibits, most of which are newly developed.

#### A.    **Exhaustion and *Martinez***

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards*

*v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner concedes that Grounds Two and Three are procedurally defaulted because he failed to fairly present them to Oregon's state courts during his PCR proceedings. He argues, however, that his PCR attorney was ineffective for not raising the claims such that he can excuse his default by way of a showing of cause and prejudice pursuant to *Martinez v. Ryan,* 566 U.S. 1, 4 (2012).

### 1.  **Standards**

Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (only the constitutionally ineffective assistance of counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez v. Ryan,* 566 U.S. 1, 4 (2012), the Supreme Court found "it . . . necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Id* at 8. It concluded, "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*

In order to establish cause to excuse his default pursuant to *Martinez*, Petitioner must show that his underlying claim of ineffective assistance of trial counsel is substantial insofar as it has "some merit." He must also demonstrate that his PCR attorney was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to raise the claim. "[T]o fulfill this requirement, a petitioner must not only show that PCR counsel performed deficiently, but also that this prejudiced petitioner, i.e., that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2017) (quotation omitted). Such a finding, of course, would necessarily require the Court to conclude that there is a reasonable probability that the trial-level ineffective assistance claim would have succeeded had it been raised. *Id.*

## 2. **Analysis**

To evaluate Petitioner's cause and prejudice argument, the Court looks to the viability of the attorney conflict claims raised in Grounds Two and Three of the Amended Petition. The Sixth Amendment carries with it a right to conflict-free representation. *Wheat v. United States*, 486 U.S. 153 (1988). In order to establish a Sixth Amendment violation, a petitioner who raised no objection at trial must show that "an actual conflict

of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id* at 349-50.

Petitioner contends that Richardson held a grudge against his former employer, the Multnomah County District Attorney's Office, from which he had resigned while suspended pending an investigation into questionable practices and tactics. Petitioner's Exhibit 62. Petitioner asserts that Richardson, who was disbarred by the time PCR counsel filed his Amended Petition, was absolutely fixated on besting his former employer at trial, leaving him motivated solely by his own self-interest and causing him to hide the State's plea offer from Petitioner. Petitioner reasons that where an actual, unwaivable conflict of interest existed between Richardson and him, PCR counsel was obliged to present the issue to the PCR Court.

The first problem with Petitioner's argument is that *Sullivan*'s presumed prejudice in the presence of an actual conflict between an attorney and his client is limited to instances involving multiple representation, a situation not present in Petitioner's case. In *Mickens v. Taylor*, 535 U.S. 162, 168 (2002), the Supreme Court determined that *Sullivan*'s presumption of prejudice "is justified because joint

representation of conflicting interests is inherently suspect, and because counsel's conflicting obligation is to multiple defendants . . . make it difficult to measure the precise harm arising from counsel's errors." 535 U.S. at 168.

The Ninth Circuit recognized that "[t]he *Mickens* Court emphasized that *Sullivan* required a showing that counsel actively represented conflicting interests, which did not support the expansive application to other sorts of conflicts or ethical violations, such as conflicts between a client's welfare and counsel's financial interests." *United States v. Walter-Eze*, 869 F.3d 891 (2017) (internal quotation omitted). It further stated that the "*Mickens* Court specifically and explicitly concluded that *Sullivan* was limited to joint representation" and that anything else amounted to an open question. *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005).

Similarly, Oregon law has not extended *Sullivan* beyond the scope of joint representation. *See Dotta v. Keeney*, 90 Or. App. 327, 330 (1988); *Clark v. Oregon*, 267 Or. App. 544, 550 (2014). Although Petitioner directs this Court to cases that predate *Mickens,* do not directly discuss *Sullivan,* or are from judicial districts that are not binding on this court or Oregon's state courts, they are not persuasive to show that this area of the law was so well established in Plaintiff's favor that PCR counsel was obligated to raise a *Sullivan* claim in state court.

See *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) ("*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms.").

Putting aside the limited scope of *Sullivan*, Petitioner's claim that Richardson was motivated by a blinding desire to prevail against his former employer at trial no matter the cost is belied by the record. Respondent identifies seven cases, including three involving serious felonies, that Richardson settled with the Multnomah County District Attorney's Office prior to Petitioner's trial. Respondent's Exhibit 178. These dispositions suggest Petitioner's decision to forego a plea was not based upon any obstinate refusal to enter a guilty plea on Richardson's part. While Petitioner correctly asserts that the record does not contain all of the particulars of these cases, the fact that Richardson settled all of them with the Multnomah County District Attorney's Office belies Petitioner's assertion that Richardson was motivated only by his own desire to prevail in cases involving his former employer by refusing to settle, taking the cases to trial irrespective of his client's interest, and using any means necessary to prevail.

Even if Petitioner could prove that Richardson's own personal and overriding interest was to proceed to trial without advising Petitioner of the State's 140-month plea offer, this approach does not appear to conflict with Petitioner's own

desires. As the PCR Court found in this case, Petitioner "had already decided his defense and had arranged the witnesses" by the time he retained Richardson, "Richardson knew that the [Petitioner's] witnesses were going to lie at [Petitioner's] request," Petitioner "clearly never attempted to change the plan he and his attorney had agreed to[,]" and Petitioner never indicated a willingness to admit his participation in his crimes. Respondent's Exhibit 159, p. 2. Where Petitioner fabricated his own alibi before he ever retained Richardson, Richardson's purported desire to prevail at trial by any means necessary was consistent with Petitioner's own approach to the case.

There is further evidence of Petitioner's unwillingness to accept a plea offer from the State. After he was convicted at trial, Petitioner: (1) rebuffed the State's 120-month plea offer because he was unwilling to cooperate with the its investigation pertaining to the Quest shooting; and (2) expressed that he would not be willing to settle for any sentence exceeding 90 months for all convictions, including those associated with witness tampering. Respondent's Exhibits 175 & 176. Given that Petitioner was unwilling to settle for a 120-month sentence in the wake of his conviction, he cannot establish that he would have accepted a 140-month offer prior to trial that did not include a resolution of the witness tampering charges.

PCR counsel had a variety of strategically sound reasons not to raise an ineffective assistance of trial counsel claim predicated on a conflict of interest between Petitioner and Richardson. As a result, PCR counsel's performance did not fall below an objective standard of reasonableness, thus Petitioner fails to establish cause and prejudice to excuse his default.

## IV. **Ground Four**

Finally, Petitioner alleges that appellate counsel was ineffective for failing to appeal the denial of Petitioner's Motion for New Trial. Petitioner has not argued this claim in his briefing and, therefore, has not sustained his burden of proof. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims). Even if Petitioner had briefed the merits of this claim, the court has examined it based upon the existing record and determined that it does not entitle him to relief.

///

///

///

///

///

///

///

///

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#27) is denied. The Court does, however, issue a Certificate of Appealability as to Petitioner's argued claims identified as Grounds One, Two, and Three of his Amended Petition.

IT IS SO ORDERED.

DATED this 7th day of November, 2018.

_____
Michael H. Simon
United States District Judge